[Argued October 13; decided October 25, 1897.]

## LANDIS *v.* LINCOLN COUNTY.

(50 Pac. 530.)

1. LINCOLN COUNTY — FEES OF OFFICERS — STATUTES — CONSTRUCTION. — The act of 1893, creating Lincoln County (Laws 1893, p. 66), provides that the sheriff of the county "shall receive the same fees as are now allowed by law to the sheriff * * * of Benton County." The general salary law (Laws 1893, p. 163), enacted two days later, provides that the sheriff of Benton County shall receive an annual salary of $2,000. *Held,* that the first law was not affected by the subsequent enactment; said former law contemplating that the sheriff of Lincoln County shall receive the same compensation as the sheriff of Benton County for like services under the fee system, and not that their aggregate annual compensation shall be the same.

SPECIAL AND LOCAL LAWS. — The law of 1893, fixing the salaries of the sheriffs in all the counties but one in Oregon (Laws 1893, p. 183), is not void because it is a local or special law in respect to salaries; the generality of application required by article IV, § 23, subdivision 10, of the constitution, refers to the assessment and collection of taxes, not to the fees and salaries of public officers: *Northern Counties Trust* v. *Sears,* 30 Or. 388, explained.

From Lincoln: J. C. FULLERTON, Judge.

Application by George A. Landis for a mandamus on Lincoln County and its county court, which was refused; hence this appeal.

AFFIRMED.

For appellant there was a brief over the names of *Weatherford & Wyatt,* and *Walter S. Hufford,* with an

oral argument by *Mr. Hufford* and *Mr. Jas. K. Weath-erford.*

For respondent there was a brief over the names of *W. E. Yates,* district attorney, and *Martin L. Pipes,* with an oral argument by *Mr. Pipes.*

Opinion by MR. JUSTICE WOLVERTON.

This is a proceeding by mandamus instituted by the sheriff of Lincoln County to compel the county court of said county to audit and allow his claim for services as such sheriff for the months of August, September, October, and November, of the year 1896, amounting to the sum of $666.66. There was a demurrer to the alternative writ, which being overruled, judgment was rendered against plaintiff, dismissing the action, from which he appeals.

1. The solution of the sole question in this case depends entirely upon the construction to be given the following clause contained in an act entitled "An act to create the County of Lincoln and to fix the salaries of county judge and treasurer thereof," viz.: "The sheriff and county clerk of said county shall receive the same fees as are now allowed by law to the sheriff and county clerk of Benton County:" Laws 1893, p. 66. At the time the act passed both houses and received the signatures of the presiding officers, there was pending an act to change in part the compensation and mode of payment of certain county officers, including clerks and sheriffs. This latter act (Laws 1893, p. 163) was first introduced, but passed both houses and received the signatures of the presiding

officers two days later. By section 12 thereof it was provided that the provisions of the act should not apply to the clerks, sheriffs, and recorders of conveyances then in office, and all acts and parts of acts in conflict therewith were repealed. The act further provided that the sheriff of Benton County should receive an annual salary of $2,000, which, together with the salaries of other county officers established in like manner, should be audited and paid by the several counties to the respective parties entitled thereto in monthly payments, and in the same manner that other county charges are paid. It also established a salary for the sheriff and clerk of every other county in the state, except Lincoln, which act was amended in 1895, but not as it pertains to any matters here alluded to.

It is contended that the two acts should be construed in pari materia, in determining the compensation of the sheriff of Lincoln County, and that the word "fees," used in the Lincoln County act, should be construed to signify compensation, and should take the form of the compensation received by the sheriff of Benton County, whether by the receipt of fees, under the old law, up to the first Monday in July, 1894, or by a fixed salary thereafter, as established by the act of 1893. By the ordinary acceptation of the term "fees," as heretofore and now used in the statute, we understand it to signify compensation or remuneration for particular acts or services rendered by public officers in the line of their duties, to be paid by the parties, whether persons or municipalities, obtaining the benefit of the acts, or receiving the services, or at

whose instance they were performed (*Musser* v. *Good*, 11 Serg. & R. 247; *Tillman* v. *Wood*, 58 Ala. 578), while the term "salary" denotes a recompense or consideration to be paid a public officer for continuous, as contradistinguished from particular, services, and may be denominated "annual or periodical wages or pay" (*Cowdin* v. *Huff*, 10 Ind. 83; Black. Law Dictionary), Lexicographers and some authorities class "salary" and "wages" as synonymous (see Webster, and Rapalje & Lawrence's Law Dictionary, and *Commonwealth* v. *Butler*, 99 Pa. St. 535); but not so with the terms "salary" and "fees," as they appear generally to be distinguished very much as is indicated above. But the interpretation of the acts in question does not depend so much upon the technical definition of the terms as upon the sense in which they were used by the legislature. The real intention of that body in calling them into requisition as agencies for the expression of its legislative will ought to and will control. The term "fees" is not so inflexible as that it may not have been used in the sense of "salary" or "wages." We may cite an instance. Section 2364, Hill's Ann. Laws, provides that the fees of the assessor shall be $3 per day, in certain counties $4, and that in Multnomah County he shall receive $6,000 per annum for his services.

Now, it is evident that the legislature meant by the use of the term "fees," in that section, to signify the compensation to which the assessor should be entitled. But, in order to determine the legislative intent, we must look to the conditions of the old law touching the compensation of sheriffs, and the cir-

cumstances and conditions attending the enactment of the laws we are called upon to interpret. When the bill creating Lincoln County was introduced, the sheriff of Benton was receiving, as compensation for his services as such officer, certain fees for particular services, which were required to be paid by the parties receiving the services. It was in the light of this condition of the law, undoubtedly, that it was drafted and introduced. So that, in providing that the sheriff of Lincoln County "shall receive the same fees as now allowed by law to the sheriff * * * of Benton County," it is perfectly apparent, without further comment, what compensation the legislature meant to establish as a consideration for the services of the sheriff of Lincoln when the bill was introduced. After the bill passed the house, however, the bill for a change in the fee system was duly adopted at the same session, which repealed the old law in so far as it affected the manner in which the sheriffs of all the counties in the state should be compensated for their services as public officers: *Northern Counties Trust* v. *Sears*, 30 Or. 388 (35 L. R. A. 188, 41 Pac. 931). But it did not affect the incumbents, who continued to receive the same fees and perquisites, and in the same form, until the first Monday in July, 1894, the date of the expiration of their several terms. Nor did the legislature make any change in the Lincoln County act regarding the sheriff's compensation. While the conditions had changed somewhat, it does not seem that the legislature deemed it necessary or advisable to amend the bill in that particular so as to cover all phases of the new conditions, and we must therefore

conclude that the legislative intent remained the same at the time of the adoption of the act as it stood at the date of its introduction.   Nor does the fact that the act revoking in part the fee system has been subsequently amended assist us in determining the proper interpretation of the acts in question.   In the amended act the Lincoln County sheriff was omitted from the list providing salaries as in the original act, and very probably by sheer oversight.   When the salary bill was introduced, Lincoln County was not in existence, and was therefore omitted from the list of counties whose sheriffs were provided for; and when it was amended the fact that it was not included was probably overlooked, and hence the lack of legislation concerning it.   The words of the Lincoln County act, viz: "the same fees as are now allowed by law," are of controlling signification.   It was not intended that his compensation should be the same, but that he should receive the same compensation for like services.   If he summoned a jury, or served a warrant of arrest or writ of execution, he was to receive the same compensation for the particular services rendered as the sherff of Benton County should receive for like services.    And, while the sheriff of Benton County might have much to do, the sheriff of Lincoln County might have little; and, while the compensation for the same services were intended to be the same, it was not intended that their aggregate annual compensation should be the same, unless they earned it under the fee system then extant and prevailing. Hence it would be illogical and unwarrantable to infer that the legislature intended that the sheriff of

Lincoln County should receive the same salary that
the sheriff of Benton County should receive subse-
quent to the first Monday in July, 1894, and we
cannot thus interpret the law.    It is, perhaps, an un-
fortunate condition of the law; but the courts are
powerless to correct it, as they must construe legisla-
tive enactments in accordance with the evident intent
of the legislature in adopting them.

2.    It is suggested in the brief of counsel, and was
urged at the argument, that, if the Lincoln County
act did not provide for a salary as compensation for
the sheriff of that county, then the act changing the
fee system was unconstitutional and void, in so far as
it did not provide a general system for the compensa-
tion of clerks and sheriffs, reaching throughout the
state.    This involves a misconception of the ground
upon which the Sears case was decided.    The ques-
tion made there was that the act was unconstitutional
and void because it was an act for the assessment and
collection of taxes for state and county purposes, and
that it was local and special because Lincoln County
was not included within its purview.    And it was
held, admitting only for the sake of the argument that
it was a revenue law, that the law was general in so
far as it attempted to provide a system for the collec-
tion of revenues from suitors and others, and that the
fact that the act omitted to provide a salary for the
sheriff and clerk of Lincoln County would not render
it amenable to the objection that it was local or spec-
ial.    The generality of the law required by the con-
stitution pertains to the assessment and collection of
taxes, and not to the subject of fees and salaries of
public officers.

We have been asked by the defendant, for the guidance of the County Court of Lincoln County, to indicate what powers, if any, it has in the premises to compensate the sheriff and clerk out of the funds of the county; but this is a matter we cannot now determine, as it involves a question foreign to the case made upon the record, and what we might say pertaining to it would be obiter, and not of binding force upon litigants.

AFFIRMED.