

# THE ATTORNEY GENERAL
# OF TEXAS

AUSTIN 11, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

September 27, 1951

Hon. Gene Maddin  — Opinion No. V-1294
District Attorney
Waco, Texas

Re: Constitutionality of the provision
in Senate Bill 271, Acts 52nd Leg.,
1951, ch. 368, p. 620 (Sec. 57, Art.
1436-1, V.P.C.), requiring the com-
missioners' courts in certain coun-
ties to fix an additional salary for
tax collectors for handling certif-
Dear Sir: icate of title applications.

Your request for an opinion is in substance as follows:

Does the provision in Section 57 of Article 1436-1,
V.P.C., as amended by Senate Bill 271, Acts 52nd Leg.,
1951, ch. 368, p. 620, providing that in counties where
the tax collector is compensated on a salary basis, the
commissioners' court shall fix as additional salary for
the tax collector a portion of the fees collected for cer-
tificates of title applications violate Section 61 of Article
XVI, Constitution of Texas?

Section 61 of Article XVI, Constitution of Texas, provides
in part:

"All district officers in the State of Texas and
all county officers in counties having a population of
twenty thousand (20,000) or more, according to the
then last preceding Federal Census, shall be com-
pensated on a salary basis. ...

"All fees earned by district, county and precinct
officers shall be paid into the county treasury where
earned for the account of the proper fund, ... provided
that where any officer is compensated wholly on a fee
basis such fees may be retained by such officer or paid
into the treasury of the county as the Commissioners
Court may direct. ..."

Section 57 of Article 1436-1, V.P.C., as amended by Senate
Bill 271, supra, provides:

"Each applicant for a certificate of title or re-
issuance thereof shall pay to the designated agent the
sum of fifty (50¢) cents, of which twenty-five (25¢)
cents shall be retained by the designated agent.  Twen-
ty (20%) per cent of such twenty-five (25¢) cents shall
be set aside as a special salary fund for extra compen-
sation and personal expenses of the designated agent
for additional duties required of him by this Act;  and
from the remainder he shall be entitled to sufficient
money to pay expenses necessary to efficiently per-
form the duties set forth herein; and the remaining
twenty-five (25¢) cents shall be forwarded to the De-
partment for deposit to the State Highway Fund, to-
gether with the application for certificate of title, with-
in twenty-four (24) hours after same has been received
by said designated agent, from which fees the Depart-
ment shall be entitled to and shall use sufficient money
to pay all expenses necessary to efficiently administer
and perform the duties set forth herein; and there is
hereby appropriated to the Department all of such fees
for salaries, traveling expense, stationery, postage,
contingent expense, and all other expenses, necessary
to administer this Act through the biennium ending Au-
gust 31, 1951.  Provided any such designated agent may
employ any and all necessary assistants and incur any
and all necessary expense in administering this Act in
his county.  Such designated agent shall pay such em-
ployed assistants and such necessary expenses incurred
by him from the funds retained by him hereunder, and
any amount of such funds remaining in his hands in any
event shall be by him remitted to the Road and Bridge
Fund of his county; provided further, that in counties
in which the designated agent is compensated on a fee
basis, he shall be entitled to retain, as added compen-
sation, the fund created by the twenty (20%) per cent of
the twenty-five (25¢) cents above set aside; and in coun-
ties where he is compensated on a salary basis, the
Commissioners Court shall fix and allow, as additional
salary for the duties required under this Act, a sum an-
nually not less than fifty (50%) per cent and not more
than the total of the special salary fund created by set-
ting aside one-fifth (1/5) of such twenty-five (25¢) cents
fee retained, any excess to be paid into the Road and
Bridge Fund of the county." (Emphasis added through-
out.)

The county tax collector in each county of the State is the "designated
agent" referred to in this statute. Sec. 26, Art. 1436-1, V.P.C.

Section 61 of Article XVI of the Constitution did away with the fee system of compensation in counties of 20,000 population or more and in counties of less than 20,000 population wherein the commissioners' court determines that the officers shall be compensated on a salary basis. Under the fee system as it existed at the time of the amendment, the officer received and retained the money collected as fees without depositing it in the county treasury during the fiscal year, only accounting for the manner in which it was spent. Arts. 3883, 3891, 3897, and 3899, R.C.S. 1925, as amended prior to August 24, 1935. The amount he received as compensation and the time at which he received it depended upon the collection of fees as services were performed. Any excess over the amount the officer was entitled to retain as compensation and the amount spent for authorized expenses was paid into the county treasury at the end of each fiscal year. Art. 3898, R.C.S. 1925.

By virtue of Section 61 of Article XVI, officers compensated thereunder on a salary basis are required to pay into the county treasury all the fees of office as they are collected. One purpose of the amendment was to bring into the county treasury the money collected as fees at the time they were collected and thus to give the county a greater control over these funds than it had theretofore possessed. The amendment does not specify that the fees shall be deposited in any particular fund; it provides only that the fees shall be paid into the county treasury "for the account of the proper fund."

In construing the provision of Article 1436-1 authorizing the county tax collector to retain twenty-five cents of the certificate of title fee, it was held in State v. Glass, 167 S.W.2d 296 (Tex. Civ. App. 1942, error ref. 141 Tex. 83, 170 S.W.2d 470), that where the tax collector was compensated on a salary basis, these fees were to be paid into the county depository. See Att'y Gen. Op. O-5447 (1943). Senate Bill 271 does not attempt to change this construction. Under the provision that twenty per cent of the twenty-five cents "shall be set aside as a special salary fund for extra compensation and personal expenses of the designated agent," tax collectors who are compensated on a salary basis are required to deposit this amount in the county treasury. The statutory requirement that it be deposited in a "special salary fund" does not contravene Section 61 of Article XVI, which provides only that the fees be paid into the treasury for the account of the "proper fund." The Constitution permits the Legislature to designate what is the "proper fund" for the deposit of fees, and the Legislature had the authority to specify that the fees from this source should be deposited in a special fund. Att'y Gen. Op. O-5453 (1943). We therefore conclude that the provision of Article 1436-1 creating a special salary fund is not violative of the constitutional provision under consideration.

A second purpose in the adoption of Section 61 of Article XVI was to change the compensation of certain county officers from a fee basis to a salary basis alone. Settegast v. Harris County, 159 S. W.2d 543 (Tex. Civ. App. 1942, error ref.). In order to determine whether Article 1436-1 violates the constitutional provision for compensation of officers on a salary basis, it is necessary to determine whether the compensation to be paid the tax collector under Article 1436-1 constitutes a fee or a salary.

The Constitution itself does not define salary. Webster's New International Dictionary (2nd Ed. 1938) defines salary as follows: "The recompense or consideration paid, or stipulated to be paid, to a person at regular intervals for services, especially to holders of official, executive, or clerical positions; fixed compensation regularly paid, as by the year, quarter, month, or week." The distinction between "salary" and "fees" has been considered in numerous cases. In Board of Commissioners of Teller County v. Trowbridge, 42 Colo. 449, 95 Pac. 554, 555 (1908), the court stated the test, which has often been repeated in other cases, as follows:

"The distinction between salary and fees recognized by all the authorities is this: A salary is a fixed compensation for regular work, while fees are compensation for particular services rendered at irregular periods, payable at the time the services are rendered."

In Cox v. Holmes, 14 Wash. 255, 44 Pac. 262 (1896), the court had before it a constitutional provision that the legislature "shall fix the compensation by salaries of all county officers." It was there stated:

"We think that the system which the framers of the constitution intended to provide by Section 8, supra, was that of 'fixed' and established 'compensation by time' as distinguished from the system of specific fees for specific services which had theretofore prevailed; and . . . it was used in the constitution to mean 'a payment dependent upon the time, and not on the amount of the service rendered' by the officer."

According to all the definitions which we have found, the characteristic which distinguishes a salary from fees is that a salary is paid at regular intervals, whereas a fee is paid for a particular service as and when it is performed. In Landis v. Lincoln County, 31 Ore. 424, 50 Pac. 530 (1897), the court pointed out this distinction in the following language:

"By the ordinary acceptation of the term 'fees,' as heretofore and now used in the statute, we under-

stand it to signify compensation or remuneration for
particular acts or services rendered by public offi-
cers in the line of their duties, to be paid by the par-
ties, whether persons or municipalities, obtaining the
benefit of the acts, or receiving the services, or at
whose instance they were performed [citing author-
ities], while the term 'salary' denotes a recompense
or consideration to be paid a public officer for con-
tinuous, as contradistinguished from particular,
services, and may be denominated 'annual or period-
ical wages or pay.'"

We think Article 1436-1 contemplates that the commis-
sioners' court shall fix a definite annual sum to be paid to the tax
collector as salary. It is significant that the Legislature has pro-
vided two methods of compensation, one applicable to tax collectors
compensated on a fee basis and the other applicable to tax collectors
compensated on a salary basis. It is evident that the Legislature in-
tended that the latter officers should be paid a salary, having in mind
the distinctions which we have been discussing. The statute does not
authorize the commissioners' court to set a rate of compensation
based on a percentage of the amount collected. Rather, it provides
that the commissioners' court shall fix a sum annually.

Applying the definitions noted above, the question for de-
termination is whether the compensation allowed is a fixed amount.

In Greer v. Hunt County, 249 S.W. 831 (Tex. Comm. App.
1923), it is stated:

. "The controlling element in determining whether
the amount to be received is upon a commission or
salary basis is whether that amount, by whatever name
it may be called, is absolute and fixed regardless of
what the lawful commissions may be, or is made con-
tingent upon earning that amount as commissions."

In that case, a statute required that the county treasurer be com-
pensated by commissions based on the amount of money which
passed through his hands. The statute set the maximum amount
of commissions to which he was entitled at $2000, but authorized
the commissioners' court to fix a lower amount as the total com-
missions which he could receive. The Commissioners' Court of
Hunt County had undertaken to fix the amount of $1200 as the
treasurer's "salary," which was to be paid in equal monthly in-
stallments of $100 out of county funds, regardless of whether the
treasurer had actually earned that amount in commissions. The

court held that since the amount fixed was not contingent upon
the treasurer's earning that sum in commissions, it was a sal-
ary.

We do not construe. the Greer case as holding that a
fixed amount designated as a salary is converted into fees mere-
ly because it is payable out of a fund originally accumulated
from fees. The compensation of an officer may be a salary in-
stead of commissions or fees when it is payable out of other
funds, as in the Greer case, but a salary does not necessarily
become commissions or fees when it is payable out of a specif-
ic fund composed of the commissions or fees. It is not uncom-
mon for the Legislature to provide that the expenses of various
departments, including salaries of officers and employees, are to
be paid out of fees collected by the department. An example of a
similar provision is found in Article 1436-1, in providing that the
expenses for administering the Certificate of Title Act are to be
paid out of the fees collected thereunder. So far as we know, the
power of the Legislature to provide that a certain salary shall be
paid from a specific fund, in the absence of a constitutional direc-
tion that it must be paid from a designated source, has never been
questioned.

Under Article 1436-1, the amount of the salary bears a
relationship to the volume of work performed in the particular
county. While it has sometimes been stated that a salary is based
on time of service rather than on amount of services rendered,
the statement should not be taken to mean that the salary limits
cannot be determined on the basis of the officer's responsibilities.
The fact that an officer is granted compensation in proportion to
the amount of work done does not prevent it from being a salary.
Indeed, it has been recognized in numerous cases that the volume
of work done is a fair basis for fixing salaries. In Bexar County
v. Tynan, 128 Tex. 223, 97 S.W.2d 467, 470 (1936), the court said:

"In the case of Clark v. Finley, 93 Tex. 171,
54 S.W. 343, this court recognized that substantial
differences in populations of counties could be made
a basis of legislation fixing compensation of officers,
on the theory, as the court clearly recognized, that
the work devolving upon an officer was in some de-
gree proportionate to the population of the county.
This has frequently been recognized by courts as
creating a sufficient distinction to justify a larger
compensation for county officers in counties having
a large population as compared with compensation
to like officers in counties having a small population."

Although this case dealt with compensation on a fee basis, the principle that the amount of compensation may be varied in proportion to the volume of work done is equally applicable to compensation of officers on a salary basis. The fact that the clas-sification is placed directly on the volume of work rather than on the indirect basis of population certainly should not vitiate the classification.

In view of the foregoing discussion, we are of the opinion that the provision in question is not violative of Section 61 of Article XVI, unless the requirement that the officer receive at least fifty per cent of the amount collected produces this result. We do not believe the fixing of the salary by the commissioners' court at an amount which happens to exceed the salary fund accumulated during the fiscal year would destroy its character as a salary. However, it might happen that the commissioners' court would fix the salary at an amount less than fifty per cent of the fund. In that event, the tax collector could demand that he be paid the difference between the amount allowed and fifty per cent of the fund. This being true, the amount which the officer actually received might be directly contingent on the fees collected. Under one view of the rule announced in the Greer case, this mandatory minimum conceivably might deprive the compensation of the essential characteristic, in order for it to be a salary, that the amount actually paid to the officer be independent of fees collected. We do not believe the court intended its holding to extend that far. The question before the court was whether commissions were converted into salary by virtue of the fact that the amount allowed was payable out of other funds. It is not at all clear that the court, if presented with the converse situation, would have held that what purported to be a salary became fees merely because the compensation was based on the volume of work which the officer performed and was payable out of a county fund composed of fees.

We are of the opinion that the salary allowed in Section 57 of Article 1436-1 meets the test that it be a fixed amount. However, Section 61 of Article XVI does not clearly require that the salary paid thereunder be a "fixed" amount. One of the main objects of the constitutional amendment, as we understand it, was to provide that officers be paid at regular intervals rather than at irregular intervals as the fees were collected and to require that the fees coming into their hands be placed in the county treasury. Section 61 of Article XVI does not indicate that the salaries of county officers must be unalterably fixed at a definite amount in advance. We cannot say that it clearly prohibits the enactment of this statute.

It has been noted that the Legislature has provided two different methods of compensation under Senate Bill 271, one applicable to tax collectors compensated on a fee basis and the other applicable to tax collectors on a salary basis. Manifestly, the Legislature was striving to observe the constitutional requirements and to enact a valid statute. The Legislature obviously construed Section 61 of Article XVI as not prohibiting the enactment of the provision in question. Where the meaning of a constitutional provision is doubtful, the interpretation given to it by the legislative branch of the government is entitled to weight and should be followed unless it is wrong "beyond a reasonable doubt." Koy v. Schneider, 110 Tex. 369, 218 S.W. 479, 221 S. W. 880 (1920). In Dowdell v. McBride, 92 Tex. 239, 47 S.W. 524 (1898), the court said that legislative interpretation as applied to the Constitution may be resorted to for the purpose of holding an act constitutional "unless it be clearly not." Also see Hill County v. Sheppard, 142 Tex. 358, 178 S. W.2d 261 (1944).

No principle is more firmly established in the law than the rule that a statute is presumed constitutional and will not be declared unconstitutional unless it is clearly so. An act of the Legislature must be sustained as constitutional unless its enactment is expressly or by necessary implication prohibited by the Constitution. Dendy v. Wilson, 142 Tex. 460, 179 S. W.2d 269 (1944); Trapp v. Shell Oil Co., 145 Tex. 323, 198 S.W.2d 424 (1946); Duncan v. Gabler, 147 Tex. 229, 215 S.W.2d 155 (1948).

Since we are unable to say that Section 61 of Article XVI clearly prohibits the enactment of this statute and since the Legislature has construed it as not prohibiting the enactment, we are not prepared to say that this one feature of Article 1436-1, by which the amount fixed by the commissioners' court may be varied, renders the statutory provision unconstitutional.

## SUMMARY

Under Article 1436-1, V.P.C., as amended by S.B. 271, Acts 52nd Leg., 1951, ch. 368, p. 620, the commissioners' court is required to fix a definite sum as additional salary for the county tax collector,

payable out of the "salary fund" set up in the statute, where the tax collector is compensated on a salary basis. The provision of Article 1436-1 for the payment of an additional salary to county tax collectors compensated on a salary basis does not violate Section 61, Article XVI, Constitution of Texas.

Yours very truly,

APPROVED:

Everett Hutchinson
Executive Assistant

Charles D. Mathews
First Assistant

PRICE DANIEL
Attorney General

By Mary K. Wall

Mary K. Wall
Assistant

MKW:b