**ROBINSON v. WICHITA COUNTY.**

No. 15488.

Court of Civil Appeals of Texas.

Fort Worth.

March 5, 1954.

Rehearing Denied April 2, 1954.

Bullington, Humphrey, Humphrey & Fillmore, Leslie Humphrey, Wichita Falls, Samuels, Brown, Herman & Scott, William M. Brown, Fort Worth, for appellant.

McDonald & Anderson, Geo. W. Anderson, Wichita Falls, for appellee.

MASSEY, Chief Justice.

This is an appeal by the Tax Assessor-Collector of Wichita County, Texas, from a judgment of the District Court of Wichita County, Texas, by which the trial court held unconstitutional that part of Section 57 of Article 1436–1, Vernon's Penal Code of the State of Texas, which provides for compensation to the "designated agent" under and by virtue of which he had been paid certain compensation, right to retain which was contested by the appellee County which had theretofore paid the compensation. Such agents are by other Sections of the Article named as the county tax collectors of the State. The material part of Section 57 reads:

"Each applicant for a certificate of title or reissuance thereof shall pay to the designated agent the sum of fifty (50¢) cents, of which twenty-five (25¢) cents shall be retained by the designated agent. Twenty (20%) per cent of such twenty-five (25¢)

cents shall be set aside as a special salary fund for extra compensation and personal expenses of the designated agent for additional duties required of him by this Act; * * * provided further, that in counties in which the designated agent is compensated * * * on a salary basis, the Commissioners Court shall fix and allow, as additional salary for the duties required under this Act, a sum annually not less than fifty (.50%) per cent and not more than the total of the special salary fund created by setting aside one-fifth (⅕) of such twenty-five (25¢) cents fee retained, any excess to be paid into the Road and Bridge Fund of the county."

■ Article 1436–1, V.A.P.C. is what is known as the Certificate of Title Act. It was first passed by the Texas Legislature in 1939. Its purpose was the establishment of a system to maintain a record of automobile and truck ownerships, mortgages, etc., as a protection to the citizens of this State as owners of or lienholders upon this particular type of personal property. Its character partakes somewhat of the nature of the official records of title to real estate. Its administration was provided to be by State authorities and by "designated agents" of the State. Each County Tax Collector in the State as a "designated agent" was charged with the duty of issuing and transferring the certificates of title to the type of property in question in his county, and also with other duties in connection with the administration of the Act. Part of the original Act contained provision for payment of compensation to these County Tax Collectors for the performance of their duties, and this payment was provided to be made by the State direct to the Tax Collectors out of fees they collected in its administration. In the title or preamble of the Act, the only language recited applicable to the payment to the Tax Collectors as "designated agents" was the following: " * * * requiring the payment of fees; making certain provisions with reference to moneys collected under this Act; * * *."

In 1941 the Act was amended and in the preamble to the amendment was repeated the language quoted. By the 1941 amendment, however, though there was provision for the payment to the Tax Collectors of "sufficient money to pay expenses necessary to efficiently perform the duties", they were obliged to perform under the Act and its amendment without personal compensation. There was no provision for the payment to the Tax Collectors of anything but expenses.

In 1943 the Act was amended again. This amendment made no provision for any payment of compensation to the Tax Collectors. The preamble of this amendment read: "An Act amending Section 57, of the Certificate of Title Act, as the same was amended by the Acts of the 47th Legislature, Regular Session, Chapter 187, Section 6, page 345; and declaring an emergency."

In 1951 the Act was amended again. The provision of the Act as so amended embraces the controversial language language which resulted in the trial court holding a part of said Section 57 unconstitutional. The title or preamble of this amendment read: "An Act amending Section 57, House Bill No. 407, Chapter 4, Acts of the 46th Legislature, as amended by Chapter 272, Acts of the 48th Legislature, Regular Session, 1943; providing for the disposition of monies derived from the Certificate of Title Act; and declaring an emergency." The appellee contended that since the amendment made provision for the payment of compensation to the Tax Collectors of the State, and since theretofore—except between 1939 and 1941—the Act did not provide for any such compensation, the language of the preamble was insufficient to comply with the Constitutional requirement that an Act shall be void as to a subject not expressed in its title. The trial court overruled the appellee in this contention, but it has advanced it by way of a counterpoint upon appeal.

Article III, Section 35, Constitution of Texas, Vernon's Ann.St., provides: "No bill * * * shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced

in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof, as shall not be so expressed."

■ There is no doubt but what the title of the Act of 1951 in amendment of the Certificate of Title Act is as broad with reference to the provision expressed in its title as the provision of the title to the original Act provided by the words: "making certain provisions with reference to moneys collected". The law began with provision for payment of compensation to the Tax Collector and his deputies for their labors in administering it. Then for a period of years it discontinued such compensation in so far, as the officer himself was concerned, but continued it in so far as his deputies were concerned. In other words the original Act had the effect of giving to the Tax Collector the right to certain additional compensation for himself for his services of administration, and then this right was taken away by the amendment of 1941, though the preamble to such amendment did not evidence any attempt to do so. This condition was left undisturbed by the 1943 amendment. Under authority of Bitter v. Bexar County, Tex.Com.App.1928, 11 S.W.2d 163, there might be some question to the effectiveness of the amendment during at least a part of the period from 1941 to 1951, when the present amendment either newly provided for entitlement to additional personal compensation to the Tax Collector or altered the measure as to the amount of entitlement. The construction of constitutional restrictions upon the form of legislation is never given a rigid effect, and from that standpoint statutes are to be construed according to the spirit of such restrictions and in the light of the evils to be suppressed. Quinlan v. Houston & T. C. Ry. Co., 1896, 89 Tex. 356, 34 S.W. 738. The purpose of the particular constitutional provision in question was to advise the Legislature and the people of the subject matter of projected law, and thus to eliminate a practice which would otherwise be afforded in imposing upon unwary

members of the legislative bodies and of procuring the passage of laws which would never have passed had their effect been fully understood. Quinlan v. Houston & T. C. Ry. Co., supra; Gulf Ins. Co. v. James, 1945, 143 Tex. 424, 185 S.W.2d 966; Southwestern Gas & Electric Co. v. State, Tex.Civ.App.Austin 1945; 190 S.W. 2d 132, affirmed in 145 Tex. 24, 193 S.W.2d 675, in which Justice Slatton of the Supreme Court further affirmed authority to the effect that where legislative enactments are complete within themselves, even though their effect may be to amend some other law, no constitutional limitation is exceeded. It is noted that the amendment by way of the Act of 1951 is complete within itself though it amends the Certificate of Title Act.

■■ If the general and ultimate subject of a particular act as a whole is to be found within the wording of the title, the subject thus expressed, because giving reasonable notice of them, will serve to support provisions in the body of the act that are components of the general subject; are reasonably implied by it because they have been connected with and appropriate to it in similar laws or by usage; are relevant and germane to it; are necessary for the attainment of it; are reasonably auxiliary to it; are complementary to it; or are reasonable incidents of it, or of its incidents as expressed in the title. Consolidated Underwriters v. Kirby Lumber Co., Tex.Com.App.1924, 267 S.W. 703, citing many cases, and also demonstrating contrary circumstances which establish unconstitutionality. Based upon the rules established as a test by this authority and those cited, we are of the opinion that the appellee's counterpoint must be overruled.

The theory upon which the trial court did conclude that the provision in question was unconstitutional, in so far as it provided for compensation to be paid to the Tax Collector, was based upon the appellee's contention that such was the payment of fees of office in violation of the Constitution of Texas, Article XVI, Section 61, which provides in part:

"All district officers in the State of Texas and all county officers in counties having a' population of twenty thousand (20,000) or more, according to the then last preceding Federal Census, shall be compensated on a salary basis. * * *

"All fees earned by district, county and precinct officers shall be paid into the county treasury where earned for the account of the proper fund, * * * provided that where any officer is compensated wholly on a fee basis such fees may be retained by such officer or paid into the treasury of the county as the Commissioners Court may direct. * * *"

It is stipulated that at all material times Wichita County had a population of between 20,000 and 190,000 persons.

Opinion No. V–1294 of the Attorney General of Texas, dated September 27, 1951, rendered to the District Attorney of McLennan County upon the identical question here posed, exhaustively considered the matter and held the contested section of the statute constitutional. The Attorney General principally considered the constitutionality of the section from the standpoint of whether the amount provided to be received by the Tax Collector as compensation under the amendment to Section 57 of the Act constituted "fees of office" rather than "salary", fees being prohibited by the Constitutional Article. From authorities analyzed and discussed in the opinion the Attorney General concluded that the character of compensation provided by the amendment was "salary" as contrasted to and distinguished from "fees". The authorities discussed were: Webster's New International Dictionary (2nd Ed. 1938); Board of Commissioners of Teller County v. Trowbridge, 1908, 42 Colo. 449, 95 P. 554; Cox v. Holmes, 1896, 14 Wash. 255, 44 P. 262; and Landis v. Lincoln County, 1897, 31 Or. 424, 50 P. 530.

▮▮▮ We agree with the conclusions reached by the Attorney General from the cases cited. In the case of compensation due officers or employees of a government, salary is a periodical allowance as compensation for official or professional services, while fees are compensation for the performance of particular acts or services rendered in the line of some duty. Autauga Banking & Trust Co. v. Allen, 1930, 220 Ala. 478, 125 So. 805. Undoubtedly, compensation of a public officer is a fee or fees, if he is entitled to some amount as compensation immediately upon or because of performance of particular acts or services rendered in the line of some duty. In such a case the time element, both as to the service and compensation, co-exists. In the case where a public officer is compensated by way of the payment of a salary, his entitlement is not necessarily existent upon the performance of each act or service, or series thereof. Where compensation is by fee, the act is performed or work is done and the pay is due. Where compensation is by salary, acts may have been performed and work may have been completed but salary is not necessarily due. Salary is due when a time is fixed for its payment and that time has been reached. Under Section 57 of the Act, as amended, a Tax Collector is never entitled to the compensation provided for thereunder until some amount (between 50% and 100% of the total amount of the fund accumulated in the administration of the Act) is fixed and determined by the Commissioners Court of his county, and it is by the Court ordered paid to him. When so fixed it is "salary" and when ordered paid it is due and the Tax Collector's property interest is established.

Appellee strongly relies upon the authority of the case of Greer v. Hunt County, Tex.Com.App.1923, 249 S.W. 831. This case held that where a statute fixed the compensation of a County Treasurer provided by statute to be paid on a fee basis with a maximum, the Commissioners Court could not lower such maximum by ordering the payment of and paying to him a salary. No constitutional question was involved. Though the opinion states that compensation is by commission if contingent upon the earning of such as commissions we do not believe our decision here upon the constitutionality of the amend-

ment under consideration is affected thereby.

Appellee contends that since the amount of compensation payable would vary from year to year and from county to county in Texas, dependent upon how many Certificates of Title at 50¢ fee each were issued, and since the amount of the total fund to be accumulated into the "special salary fund" provided by the Act as amended is uncertain and indefinite and cannot be ascertained until some time much later in the year than the time the salary of the Tax Collector is ordinarily fixed by the Commissioners Court of each county, and since it is contingent upon and computed upon a percentage of said 50¢ fees as collected and deposited into the "special salary fund", its character as "fees" persists, and it cannot have the character of "salary".

The deputies employed by the Tax Collectors to aid him in the administration of the Act are paid compensation by him for this work. It would be no more logical to contend that they were paid "fees" merely because their salary comes out of a fund accumulated through the collection of statutory fees than it would to contend that other County officers and employees were paid "taxes" because their salary comes out of a fund accumulated through the collection of taxes.

It is true that by the provisions of the amended section of the statute it is made mandatory upon the Commissioners Court to fix the amount of compensation at some figure between 50% and 100% of the part of the "salary fund" from which the salary payable to the Tax Collector is to be fixed. In other words the statute fixes a "ceiling" and a "floor" for his wages. Dependent upon how industriously the Tax Collector applies himself to performing the duties incumbent upon him because of the Act, or upon how well he stands with the majority of the members of his Commissioners Court, he perhaps may be paid more than would be the case if he were less industrious or stood less well. We believe that this discretion as to amount to

be allowed, lodged in the Commissioners Court by the statute, destroys any characteristic that the compensation might otherwise purport to have as "fees of office". This is true despite the fact that the total amount accumulated in the "salary fund" varies from county to county each year and from year to year in each county.

Furthermore, the fact that it is impractical, if not impossible, to fix at the beginning of the year the amount of additional compensation to be paid to the Tax Collector for his services of administration has no effect to inhibit such as "salary". It is true that the usual and customary manner of fixing the salaries of county officials is for the Commissioners Court to fix an annual salary at the beginning of the year, and then to provide semi-monthly installment payments thereof. This is somewhat synonymous with the employment of persons in private enterprise when the employee knows how much he is making per week or per month and the employer knows how much is due and payable by him on payday. And we further observe the synonymity of the statute wherein it provides for the fixing of the amount and providing for the payment of the additional "salary" to the Tax Collector at a later time to the usage in private enterprise where employers in rewarding certain employees for extraordinary or profitable services pay "bonuses" rather than granting increases in regular salaries. Though commonly denominated as a "bonus" it is a "salary bonus" and in fact is part of the salary earned by the employee during the year. It is actually an additional "salary" paid to the employee, no different than the additional "salary" provided to be paid to the Tax Collectors under Section 57 of the Certificate of Title Act.

In view of our conclusion that the amendment in question is Constitutional, it becomes unnecessary to discuss other questions presented on this appeal.

We deem it worthy of note that we do not have before us by this appeal any question as to whether any compensation paid

by appellee to appellant was invalid as in excess of the maximum salary allowed by law. Counsel for appellee stated upon the hearing of the case that all the relief obtained in the trial court and contended for on appeal is necessarily premised upon the unconstitutionality of the amendment.

Judgment is reversed and rendered.