## McNair *v.* Allegheny County, Appellant.

4

Argued September 30, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Charles Alvin Jones,* County Solicitor, with him *James A. Wright,* Assistant County Solicitor, for appellant.

*Warren H. Van Kirk,* for appellee.

OPINION BY MR. CHIEF JUSTICE KEPHART, November 12, 1937:

This appeal is from a judgment entered in favor of the former mayor of the City of Pittsburgh against the County of Allegheny for a sum due under the Act of May 1, 1861, P. L. 450. This Act provides for payment of $1,000 a year to the mayor in lieu of fees formerly chargeable to the county for the hearing of prosecutions for vagrancy, drunkenness or disorderly conduct. The questions before the court below and here are: was the Act of 1861 in force during the period for which appellee claimed compensation, and is he entitled to compensation though he tried no cases contemplated by the Act of 1861?

Section 30[1] of the Act of 1861 makes it unlawful for the Mayor of Pittsburgh to receive fees from Allegheny County for trying cases of vagrancy, drunkenness or disorderly conduct, but in lieu of those fees it is provided he shall receive out of the County Treasury $1,000 per year. It is urged that this provision was repealed by implication by subsequent acts of the legislature, and

---

[1] "That from and after the first day of May, A. D. 1861, it shall not be lawful for any mayor, alderman or justice of the peace, in the Cities of Pittsburgh and Allegheny, to charge or receive, out of the county treasury, any fees or costs for trying or committing any person charged with vagrancy, drunkenness or disorderly conduct; but it shall be the duty of the constable, or other officer, arresting any person so charged in either of said cities, to take him or her before the mayor of the proper city, whose duty it shall be to hear and determine all such cases, *and in lieu of all fees heretofore authorized by law in such cases, the mayor of the City of Pittsburgh shall receive, out of the county treasury, one thousand dollars per annum,* and the mayor of the City of Allegheny two hundred and fifty dollars per annum, *and no more, to be paid quarterly;* and so much of any act of assembly as is inconsistent herewith, is hereby repealed." (Italics supplied.)

6

was not in effect when these services were performed.[2] The purpose of the act was to prevent an abuse of the fee system. Prior to its passage the mayor had jurisdiction over these offenses; the act did not take it away, but substituted for fees, as compensation for his services, an annual salary. Appellant contends that the Act of April 6, 1867, P. L. 846, supplementing the acts incorporating the City of Pittsburgh, and the Act of April 1, 1868, P. L. 565, a further supplement, formed, with the Act of 1861, a complete system for the trial of cases of vagrancy, disorderly conduct and drunkenness in that city. Section 13 of the Act of 1867 empowered the city to pass ordinances against such offenses. Section 8 of the Act of 1868 conferred jurisdiction on the mayor to try all cases under the former act. It is urged these provisions were impliedly repealed by the Act of January 7, 1874, P. L. 477, Article III, section 9, which relieved the mayor of his powers and duties as a committing magistrate, and conferred them upon police justices to be elected.

The Act of 1861 is local to the County of Allegheny; the other acts are local to the City of Pittsburgh. The Acts of 1867 and 1868, authorizing the city to make the offenses referred to punishable under municipal ordinances, and vesting exclusive jurisdiction for such cases in the mayor, can have no reference to offenses against the State and triable by the mayor acting for the State under the Act of 1861, for which the county was to pay his compensation. Though the Act of 1868 conferred jurisdiction upon the mayor to commit violators of ordinances, that did not lessen his jurisdiction to try offenders under State statutes and the common law to which the Act of 1861 referred. The Act of 1874 related entirely to the City of Pittsburgh and did not affect the designation of the mayor of that city to try such offenses

---

[2] This act has since been expressly repealed by the Act of July 1, 1937, P. L. 2609.

for the State. The Act of 1874 did not completely deprive the mayor of his powers as a committing magistrate; it seems rather to have conferred similar powers upon the five police magistrates to be elected by the people.

Appellant insists, however, that the Act of June 14, 1887, P. L. 395, repealed Section 30 of the Act of 1861, by the provision of Section 7 that the police powers vested in the mayor as committing magistrate should thereafter vest in the mayor and five police magistrates. This section of the Act of 1887 cannot be construed to repeal Section 30 of the Act of 1861. It is a general act relating not to counties but to cities of the second class. It is well settled that a general act will not be construed to repeal special or local acts unless the legislative intent to do so is clear beyond question. See *Com. ex rel. v. Brown*, 210 Pa. 29. There is nothing in the Act of 1887 which makes the continued performance of the duties imposed by the Act of 1861 upon the mayor inconsistent with or irreconcilable to it. The 7th section above referred to has been construed not to deprive the mayor of any magisterial powers. In *Pittsburgh's Petition*, 138 Pa. 401, it is stated at p. 429: "It professes to confer upon five magistrates the right to exercise for certain purposes the same police powers as are possessed by the mayor. The police power of the mayor is not diminished."

It is to be noted that in the case of *Hays v. County of Allegheny*, 52 Pitts. L. J. (O. S.) 155, President Judge KENNEDY held that the Act of March 7, 1901, P. L. 20, which substantially reënacted, in Article XVI, section 1, the provisions of Section 7 of the Act of 1887, did not repeal by implication the Act of 1861 now under discussion. The section of the Act upon which appellee rests his claim was in full force and effect while he was in office. The recent action of the legislature in specifically repealing that section by the Act of July 1, 1937, P. L. 2609, is a legislative construction that it was in effect.

Was appellee entitled to compensation regardless of the fact that he heard no cases of the kind specified by the Act of 1861, which his statement admits? The duties of the mayor of Pittsburgh for which compensation was provided by Section 30 of the Act of 1861 are magisterial. The office of magistrate is a judicial office: *McNair's Petition,* 324 Pa. 48, 53. In exercising the functions contemplated by the act the mayor was acting as a member of the minor judiciary of the county. It is well settled that a judicial officer cannot be deprived of his salary merely because he did not perform the duties of the office during the salary period, unless his failure to do so constitutes a forfeiture of, or nonfeasance in, office. In *Johnson v. Brooks,* 139 Ga. 787, 78 S. E. 37, a city judge sued to recover salary accruing during a period in which his court had ceased to act because of its abolition by the legislature; the act was later declared unconstitutional, and it was held the judge was entitled to the salary claimed. In *Commissioners of Miami County v. Collins,* 47 Kans. 417, 28 Pac. 175, a probate judge was held entitled to receive an additional fixed compensation provided by an act imposing upon him the duty of issuing liquor licenses or permits, despite the fact that none had actually been issued by him. The court said, at page 418: "The salary . . . is not dependent upon the amount of services rendered. The terms of the statute are absolute and unconditional; his office is open, and he is in attendance day by day to discharge the additional duties imposed upon him by the act of the legislature. If the conditions are such that no labor is imposed upon him, this is no reason why we should disregard the plain command of the lawmaking power." To the same effect is *Goetting v. City of New York,* 29 N. Y. Misc. 717, 61 N. Y. S. 334. There a justice of the municipal court was permitted to recover his salary from the date of his induction to office despite the fact that the legislative act conferring jurisdiction upon the municipal court did not take effect until some time

after the court was created. The court said at p. 718: "Such a salary is not measured by the duties the official actually performs or is called upon to perform, and is recoverable without regard to the labors imposed or the manner of their performance." Similarly, in *Rink v. Philadelphia,* 15 W. N. C. 345, a magistrate was permitted to recover his salary from the date of election, although for some time the duties of his office were performed by a de facto incumbent pending the determination of a contest for the office.

The mayor had an office, heard causes arising under city ordinances, and was at all times ready and willing to try cases referred to by the Act of 1861. If no such cases were brought before him, he could not be charged with failure to carry out the intent of the section. He had no control over the origin of the cases. His compensation was not dependent upon the number of cases that he should try or hear.

Appellant insists, however, that the compensation provided by the Act of 1861 is not a salary or fixed annual compensation, but is intended to pay the mayor for services actually performed. It is said to be in the nature of fees, because it was intended to replace the fees formerly collected by the mayor for these services as part of the county's expense of administering the criminal law of the State. In *State ex rel. Murphy v. Barnes,* 24 Fla. 29, 3 So. 433, it was said that the distinction between fees and salaries rests upon the distinction between payment for particular services performed, and fixed compensation for continuous services over a period of time. See also *Landis v. Lincoln County,* 31 Ore. 424, 50 Pac. 530. That the compensation provided by the Act of 1861 was intended not as fees but as salary is perfectly clear. The county had no control over the amount of fees which could be charged, and this sum varied with the number of prosecutions conducted by the magistrates. The purpose of the section under consideration was to substitute for this fluctuating demand

a fixed and determinable yearly expense. Jurisdiction was taken from the magistrates and conferred on the mayor. His compensation was stated in terms of an annual salary, with quarterly payments. Obviously, the intent was to do away with the fee system, rather than perpetuate it.

The judgment is affirmed.