AIKEN MILLS, Inc., v. UNITED STATES.

SEMINOLE MILLS v. SAME.

Civil Actions Nos. 670, 671.

District Court, E. D. South Carolina.

Jan. 4, 1944.

J. S. Y. Ivins and Percy W. Phillips, of Ivins, Phillips & Barker, both of Washington, D. C., and P. F. Henderson, of Hendersons & Salley, of Aiken, S. C., for plaintiffs.

Samuel O. Clark, Jr., Asst. Atty. Gen., Andrew D. Sharpe and Frederic G. Rita, Sp. Assts. to Atty. Gen., and Claud N. Sapp, U. S. Atty., of Columbia, S. C., for defendant.

WYCHE, District Judge.

These are suits for the recovery of custom processing taxes, collected from the plaintiffs under the Agricultural Adjustment Act, 7 U.S.C.A. § 601 et seq.

The complaints, substantially identical, allege, in order to fix jurisdiction in this Court, that the respective plaintiffs, during the time they were subject to the tax here involved, were engaged "in the processing of cotton for customers for a charge". This allegation was originally admitted by the answer in each case, but upon application of the defendant at the beginning of the trial, leave was granted to file an amended answer in each case, putting this allegation in issue.

During the trial the Government moved to dismiss the complaints on the ground that this Court has no jurisdiction of the subject matter of the suits. By agreement, I reserved my decision upon this motion, and directed that written briefs be submitted upon the question, and proceeded to take further testimony upon the merits of the case.

Processing taxes were imposed pursuant to Section 9(a) of the Agricultural Adjustment Act upon the first domestic processing of certain basic agricultural commodities, including cotton. In United States v. Butler, 297 U.S. 1, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914, the taxing provisions of the Act were declared unconstitutional.

Congress, in order to prevent the unjust enrichment of those who had paid taxes under the Agricultural Adjustment Act, but had actually shifted the burden of them to the consuming public, enacted Title VII of the Revenue Act of 1936, 7 U.S.C.A. §§ 623, 644 et seq., which imposed as a condition to the refund of these taxes the requirement that the taxpayer establish that he had borne the burden of the tax.

A special procedure was provided with respect to processing taxes. Jurisdiction of suits for their recovery was withdrawn from the courts, Sec. 905, Revenue Act of 1936, 7 U.S.C.A. § 647, and a Board of Review was constituted with exclusive jurisdiction to review the Commissioner's rejection of claims for their refund, Sec. 906, Revenue Act of 1936, 7 U.S.C.A. § 648. Processing taxes are defined in the Act, Sec. 913(b), Revenue Act of 1936, c. 690, 49 Stat. 1648, 7 U.S.C.A. § 655(b), as follows: "The term 'processing tax' means any tax or exaction denominated a 'processing tax' under the Agricultural Adjustment Act, *but shall not include any amount paid or collected as tax with respect to the processing of a commodity for a customer for a charge or fee*." (Emphasis added)

The effect of these provisions was to permit suits for the recovery of custom processing taxes, that is, taxes on processing done for a customer for a fee or charge, to remain within the jurisdiction of the United States District Courts under Section 905 of the Act, so that the question presented by the motion is, did the plaintiffs process the cotton in these cases for a customer for a charge or fee, within the meaning of 7 U.S.C.A. § 655?

The evidence establishes that each of the plaintiffs operated cotton mills, and was a subsidiary of United Merchants & Manufacturers, Inc. They entered into written agreements with the Seneca Textile Corporation (hereinafter called Seneca), also an affiliate of the United Merchants & Manufacturers, Inc., under which it was agreed that the plaintiffs "will manufacture goods and will sell and deliver the same to Seneca"; that Seneca would sell the entire output of each, and that the profits and losses resulting from the sale of the goods would be divided between Seneca and each of the plaintiffs. As stated by plaintiffs' counsel, "the contract covers a joint account between Seneca's Department M and the plaintiffs * * * under which Seneca shared in the profits and losses of the mills, and the mills shared in the profits and losses of Department M of Seneca * * * the agreement also provides certain conditions that entered into the computation of profits and losses that were to be shared

* * * but, we are principally concerned with it because of the fact that it provides participation by the converter in the mills' profits or losses, and by the mills in the converter's profits or losses. They pooled their interests in the overall profit." In the performance of the contract, Seneca purchased raw cotton which it sent to the mills to be processed. It billed the cotton to the mills, but retained title to it so as to protect it against other creditors of the mills. When the mills had finished processing the goods, they sold and delivered them back to Seneca, deducting from the total charge the cost of the raw cotton which had been billed to them by Seneca, but for which payment had not been made; the billing also included the cost of processing, its overhead and other expenses, including the processing tax. The tax was not labelled as such, but was included in the overhead charge. From time to time the mills borrowed from Seneca sums of money in order to take care of their payroll and current operating expenses, and the payment of the processing taxes, which are sought to be recovered here. When the mills delivered goods to Seneca, they credited on their billing such advances as may have been made to them during a particular period.

The agreement of each plaintiff with Seneca constitutes, in my opinion, a joint adventure, which the courts have defined to be "a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation * * *." Tompkins v. Commissioner, 4 Cir., 97 F.2d 396, 398; Dexter & Carpenter v. Houston, 4 Cir., 20 F.2d 647; Joring v. Harriss, 2 Cir., 292 F. 974.

" 'A joint adventure partakes of the nature of a partnership for a certain specific purpose, but does not have all the qualities of a partnership. "A 'joint adventure' may exist where persons embark in an undertaking without entering on the prosecution of the business as partners strictly, but engage in a common enterprise for their mutual benefits; they each have the right to demand and expect from their associates good faith in all that relates to their common interest." Jackson v. Hooper, 76 N.J.Eq. 185, 74 A. 130. See, also, Reid v. Shaffer, 6 Cir., 249 F. 553.' " See, also, Murray v. Williams, 4 Cir., 114 F.2d

282. Whether the parties to a particular contract have created as between themselves the relationship of joint adventurers, or some other relationship, depends upon their actual intention,[1] which is to be determined in accordance with the ordinary rules governing the interpretation and construction of contracts, but as to third persons the legal, and not the actual intention, controls. 33 Corpus Juris 845.

The contract contains all the essentials of a joint adventure, and, in my opinion, the parties intended to contract for those things which the law regards as constituting between them the relation of joint adventurers. But the plaintiffs contend that even if they were engaged in a joint adventure with Seneca, that fact does not solve the problem in these cases. Counsel for plaintiffs admit that Congress, in making special provision for suit in the district courts, for claims not sent to the Board of Review under Section 906, had in mind simple cases, like the butcher who slaughters a hog, or the miller who grinds some corn, for a farmer, when it referred to "the processing of a commodity for a customer for a charge or fee". But they say that the language of the statute was not limited to simple cases, that the Treasury Department in its Regulations 96, published in 1936, defines "charge or a fee" as including, "any form of compensation charged or taken by the processor for services rendered in processing a commodity for a customer," that such contemporaneous administrative construction is entitled to great weight, and conclude that "any form of compensation" is certainly broad enough to include a share of the profits.

With this conclusion, I cannot agree. I must look to the meaning of the words of the Act to find jurisdiction. Customer has been defined (Webster's New International Dictionary, 1933 Ed.) as "One who regularly or repeatedly makes purchases of, or has business dealings with, a tradesman or business house; one who customarily has dealings with a business establishment; a buyer or purchaser; a patron." Fee has been defined as "Pay; wages; salary." Charge has been defined as "The price demanded for a thing or service." As used in the statute, fee means, the payment for services done, or to be done, and charge is the price required, or demanded for services rendered, or to be

---

[1] Reid v. Shaffer, supra.

rendered. In these suits the parties to the contracts were interested in the profits derived from the sale of the goods, and that profit depended upon many contingencies. The mills were processing the cotton for the joint account and mutual benefit of both parties to the contract, for themselves, as well as for the other party. Therefore, there was no processing by the plaintiffs for a customer. The plaintiffs were interested in the outcome, not for a charge or a fee, but for a profit arising in the joint adventure as a whole, in the final sale of the goods. The processing upon which the taxes were paid by the plaintiffs, was performed as a part of the joint adventure in which the plaintiffs were engaged. Plaintiffs could not be their own customers. Their share in the profits of the joint adventure can be termed neither pay nor prices, and if there were losses, their share in the losses of the joint adventure can be termed neither charge nor fee.

In granting a motion to dismiss for lack of jurisdiction involving the construction of the same contract in reference to Arkwright No. 2 Mill, another party to the contract having a similar agreement with Seneca, in the case of Arkwright Corp. v. United States, 53 F.Supp. 359, decided December 14, 1943, Judge Sweeney, United States District Judge for the District of Massachusetts, said: "Nowhere in Arkwright's billing to Seneca does there appear to be any fee or charge as such for the processing of goods in units or in any amounts. The fact that Seneca and Arkwright were to participate in each other's profits or loss, seems to indicate a joint venture on their part in the processing of cotton into raw fabric and then into finished fabric. In the ordinary sense of the word a customer * * * presupposes a dealing at arm's length whereby the parties are free to accept or reject terms. Arkwright enjoyed no such freedom of action. Having in mind the will of Congress to allow recoveries only when the economic burden of the tax had been borne by the taxpayer, can we say that Seneca, in that sense, was a customer of Arkwright? Whatever tax was paid by Arkwright and not passed on to Seneca, if it resulted in gain to Arkwright, had to be partially shared with Seneca. I doubt very much that Congress in reserving certain jurisdiction in the District Courts meant to include such an arrangement as we find here. As between Arkwright and Seneca I find that they were joint venturers and that Arkwright did not process goods for a customer for a fee or charge within the meaning of Section 655."

Upon the trial, plaintiffs' counsel argued that the standard costs provided for by the contract was a fee or charge, but this construction is not sustained by the testimony of the witness Kirshen where he said:

"A. That's the distinction I was trying to make a minute ago. The processing tax was treated in the same way the cotton was. It was a deduction from the total price, so that the final billing was for costs of labor and overhead. In other words, the cost sheet, after the instance of the tax, showed labor, cotton and processing tax. The bill showed total costs, including all four elements, but deduction was made for the cotton, or the basic cost, and the processing tax.

"Q. Now, was it possible before the processing tax came into effect for the mill to tell whether it was making a gain or a loss on processing of the converter's cotton until after the profit and loss participation sharing had been cleared? A. No, sir, they couldn't tell until the participation had been recorded both ways.

"Q. Now, after the processing tax came into the picture, was it any different? A. No, sir."

That the plaintiffs could profit by the standard cost billing provided by the contract is impossible; their agreement was to bill at cost and if the plaintiffs had attempted to charge Seneca more than cost, Seneca could have the cost fixed by arbitration.

That the parties to the agreement under which the processing was done considered themselves in the relationship of joint adventurers and not of employers and employees, is established by the language of the agreement itself where it is said that they "will conduct the following *joint* account", and in the renewal of the contract where it is stated that Seneca's agreement is "to have finished and to sell at the best prices obtainable, the products of the mill, and to share in the profit or loss of the *joint* operation." (Emphasis added)

█ I must conclude, therefore, that the plaintiffs did not process the cotton here involved for a customer for a charge or fee within the meaning of Section 655, 7 U.S.

528

C.A. And that this court has no jurisdiction of the subject matter of the suits.

For the foregoing reasons, the motion to dismiss for lack of jurisdiction will be granted, and counsel may submit an appropriate order accordingly.

This opinion will stand as the findings of fact, and conclusions of law in this proceeding under Rule 52(a) of Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Society of European S. A. C. v. New York Hotel Statler Co., D.C., 19 F.Supp. 1. And an order so providing must be included in the final order denying the motion.