393 A.2d 654

Frank CONLEY, Joseph Friel and Theodore Pokoy,

v.

Clare JOYCE, Controller, City of Chester, Thomas McCue, Deputy Director of Accounts and Finance, City of Chester, and Howard MacNeilly, Treasurer, City of Chester, Appellants in No. 347.

Frank CONLEY, Joseph Friel and Theodore Pokoy, Appellants in No. 348,

v.

Clare JOYCE, Controller, City of Chester, Thomas McCue, Deputy Director of Accounts and Finances, City of Chester, and Howard MacNeilly, Treasurer, City of Chester, and John H. Nacrelli, Clement J. McGovern, Jr., Alexander V. Osowski, Leo S. Holmes, and James Sharp, Comprising the Chester City Council.

Supreme Court of Pennsylvania.

Oct. 27, 1978.

Reargument Denied Nov. 22, 1978.

264

Levy & Levy, Melvin G. Levy, Louis J. Sinatra, Chester, for appellants at No. 347 and appellees at No. 348.

Richard, Brian, DiSanti & Hamilton, Alexander A. DiSanti, Upper Darby, for appellants at No. 348 and appellees at No. 347.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

City of Chester police instituted a complaint in mandamus in the Court of Common Pleas of Delaware County. They seek the City of Chester's compliance with the "overtime" provision of an arbitration award entered by a Board of Arbitration pursuant to Act 111.[1] Under the overtime provision, "[e]ach member of the [Chester police] department shall receive time and a half for all time in excess of 320 hours worked during an eight week period." The award further provides: "Overtime for duty as a witness in a criminal court shall be paid for only as straight time and civil court time shall not constitute overtime."[2]

[1.] Act of June 24, 1968, P.L. 237, §§ 1 et seq., 43 P.S. §§ 217.1 et seq. (Supp.1978). Bargaining between the City of Chester and Chester police reached a stalemate. In accordance with Act 111, the parties each selected an arbitrator, the selected arbitrators chose a third to form the Board, and the Board entered its award. The overtime issue was one of seventeen the parties submitted to the Board for resolution.

[2.] The overtime provision of the award provides in full:
"OVERTIME
Each member of the department shall receive time and a half for all time in excess of 320 hours worked during an eight week period. The Board suggests in order to make this workable, that the department continue the four platoon system but do so on a six day on and two day off basis with regularly scheduled days off for each officer during said eight week period resulting in a normal schedule of 320 work hours in each eight week period. Payment shall be made for overtime in the paycheck for the ninth week to the extent that no compensatory time has been given for time worked in excess of 320 hours for said eight week period. Com-

The parties have stipulated that the claim of officer Joseph Friel would be dispositive of the claims of all officers. According to the stipulation, Friel on several occasions worked in excess of 320 hours in eight weeks and appeared in criminal court "during his off duty time." [3]

The court of common pleas concluded that Section 2004 of the Third Class City Code,[4] 53 P.S. § 37004 (as amended Supp.1978), places an upper limit upon the compensable working hours of Chester police officers. Under Section 2004, "[n]o city shall employ or require any police officer to remain on duty for more than eight hours in any twenty-four consecutive hours, nor more than forty-four hours in any one week, unless in emergency cases for the suppression of riots or tumults or the preservation of the public peace . . . ."[5] The court of common pleas therefore held the award unenforceable to the extent that it permits additional pay for non-emergency hours worked in excess of the daily and weekly limits of Section 2004. The trial court applied Section 2004 to the entire overtime award, including the "overtime for duty as a witness in a criminal court" provision. The court upheld the award in all other respects. Thus, it directed the City to pay overtime in accordance with the award for the hours not in excess of the express limits of Section 2004 of the Code.

> pensating time may however be given either during the eight week period or during the ninth week. Overtime for duty as a witness in a criminal court shall be paid for only as straight time and civil court time shall not constitute overtime."

3. The arbitration award does not distinguish between "on-duty" and "off-duty" police activity.

4. Act of June 23, 1931, P.L. 932. Section 2004 appears in full infra at Part I text.

5. Section 2004 further provides:

> "Nothing contained herein shall prevent any such city from requiring any such police officer to remain on duty or to work sixteen hours in any twenty-four consecutive hours, not more than one day each week, if required by a change in working hours or a change in shifts."

Both parties appealed to the Commonwealth Court. The Commonwealth Court affirmed the court of common pleas' determination that the award could not be enforced beyond the limits of Section 2004. But the Commonwealth Court limited the scope of Section 2004 to "on-duty" services. It therefore upheld the award of overtime pay, in its entirety, for "off-duty" hours spent as a witness in criminal court as a result of law enforcement activities. Like the court of common pleas, the Commonwealth Court upheld the award in all other respects. We granted both parties' petitions for allowance of appeal.[6]

Chester police contend that, regardless of the limits imposed by Section 2004 of the Third Class City Code, all overtime resulting from scheduled duty, including that in excess of 320 hours in an eight week period, should be compensated at "time and a half" rates.[7] The City urges that overtime within the limits of Section 2004 should be compensated at regular hourly rates ("straight time").[8] The City also asserts that "off-duty" hours in criminal court are, like scheduled duty hours, subject to the limits of Section 2004. We hold that "off-duty" hours spent in criminal court are subject to the limitations of Section 2004 of the Third Class City Code and modify the order of the Commonwealth Court accordingly. We affirm the order as modified.

## I. Scope of Section 2004

Section 2004 of the Third Class City Code provides:

6. We hear these cross-appeals pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978).

7. Chester police are the appellants at No. 348 January Term, 1977.

8. The City of Chester is the appellant at No. 347 January Term, 1977. The City had maintained, in the Commonwealth Court, that under the Third Class City Code, no overtime is lawful. In this Court, however, it concedes that overtime compensation for hours not in excess of the limits of Section 2004 is lawful. It objects only to the "time and a half" rate of pay the award fixed.

*"Hours of service; exceptions; vacations*

No city shall employ or require any police officer to remain on duty for more than eight hours in any twenty-four consecutive hours, nor more than forty-four hours in any one week, unless in emergency cases for the suppression of riots or tumults or the preservation of the public peace: Provided, That for the duration of any war in which the United States is engaged, and six months thereafter, the hours of service may exceed the number hereinbefore provided as the maximum number of hours of service, and in such cases, council shall provide for the payment of extra compensation for any hours of service in excess of such maximum hours of service, at the same rate as paid for regular service. Nothing contained herein shall prevent any such city from requiring any such police officer to remain on duty or to work sixteen hours in any twenty-four consecutive hours, nor more than one day each week, if required by a change in working hours or a change in shifts. Cities shall permit every member of the police department to have at least twenty-four consecutive hours of rest in every calendar week, except in emergency cases for the suppression of riots or tumults or the preservation of the public peace, in times of war, riot, conflagration, or public celebrations, and to have an annual vacation of not less than fourteen days without diminution of the salary or compensation fixed by ordinance. When the mayor declares an emergency and requires police officers to remain on duty overtime such officers shall be compensated on the basis of their annual salary."

Thus, in the exceptional circumstances of "war" or "emergency," third class city police officers may be "employ[ed] or require[d] . . . to remain on duty" in excess of eight hours per twenty-four hour period and in excess of forty-four hours per week. But the parties have stipulated that the Mayor of Chester did not declare an emergency during the period Officer Friel worked beyond Section 2004's express limitation and neither party claims that the "war" exception is apposite. Section 2004 provides the additional

exception to the eight hour rule for "changes in working hours or  .  .  .  shifts;" again, however, nothing in the record demonstrates that Officer Friel's claim is based upon this additional exception.

An arbitration award under Act 111 which requires a city to perform an act in conflict with the laws of the Commonwealth is not enforceable. *City of York v. Reihart*, 475 Pa. 151, 379 A.2d 1328 (1977); *Washington Arbitration Case*, 436 Pa. 168, 177, 259 A.2d 437, 442 (1969) ("an arbitration award may only require a public employer to do that which it could do voluntarily"). The Board of Arbitration's award directs the City of Chester to compensate police officers for scheduled overtime services, rendered in non-exceptional circumstances, in excess of the express limits of Section 2004. Therefore, both the court of common pleas and Commonwealth Court properly held unenforceable this portion of the arbitrators' overtime award.

Chester police assert that they are regularly scheduled by the City to work in excess of the limits of Section 2004. According to the police, the City's practice justifies enforcement of the award. The Commonwealth Court, in response to this contention, observed:

> "If this practice is, in fact, prevalent, the police must seek their remedy through the grievance procedure or, if necessary, through the courts, but in no event can they be compensated in violation of an express statutory provision."

*Conley v. Joyce*, 27 Pa.Cmwlth. 468, 473, 366 A.2d 1292, 1294 (1976). We agree with the Commonwealth Court. There can be no enforcement of an award in violation of Section 2004 of the Code.

## II.  *"Time and a Half" For Lawful Overtime*

The award provides "[e]ach member of the department .  .  .  time and a half for all time in excess of 320 hours worked during an eight week period." The City concedes the lawfulness of overtime pay for "all time in excess of 320 hours worked during an eight week period" but less than the

limits of Section 2004. It contests only the "time and a half" rate of pay.

The City points to Section 2004's limitation upon the rate of pay for overtime in emergencies. Section 2004 directs third class city councils, in emergencies, to "provide for the payment of extra compensation for any hours of service in excess of such maximum hours of service, at the same rate as paid for regular service." But Section 2004's limitation upon rate of pay addresses the unique, unpredictable circumstances of an emergency which, according to the parties' stipulation, has not occurred here. Section 2004 must be read in conjunction with the City's authority under Section 2001 of the Code to "fix, by ordinance, the number, grades and compensation of the members of the city police force. . . ."[9] No other provision of the Third Class City Code circumscribes this authority.[10] The City of Ches-

---

**9.** Section 2001 of the Third Class City Code, 53 P.S. § 37001 (as amended Supp.1978), provides:

> *"Appointment, number, rank, compensation and qualifications of policemen*

> The council shall fix, by ordinance, the number, grades and compensation of the members of the city police force, who shall be appointed in accordance with the civil service provisions of this act, and no member of the city police force having been promoted in conformity with the civil service provisions of this act shall be demoted in rank or discharged from the police force except upon proper cause shown as set forth under the civil service provisions of this act. No policeman shall, after his appointment and qualification, hold at the same time the office of constable. Council shall prescribe all necessary rules and regulations for the organization and government of the police force. The minimum annual starting salary or compensation to be paid the members of the police force by any city shall be four thousand five hundred dollars ($4,500), with minimum annual increments of three hundred dollars ($300) for the first three years of such employment. If the annual salary or compensation of any policeman employed by the city on the effective date of this amending act is less than four thousand five hundred dollars ($4,500), such salary or compensation shall be increased to four thousand five hundred dollars ($4,500), and such policeman shall receive minimum annual increments of three hundred dollars ($300) for the next three years of such employment."

**10.** Section 2008, 53 P.S. § 37008 (as amended 1957), is the only other provision of the Third Class City Code which bears upon the mode of third class city police compensation. Section 2008 provides:

ter's unqualified statutory authority to "fix, by ordinance, the number, grades and compensation" of police officers encompasses the authority to provide overtime pay at "time

> *"Extra compensation prohibited;*
> *exceptions; penalty*
>
> No policeman shall ask, demand or receive any compensation or reward whatsoever for his services other than that provided by ordinance, except rewards offered for the arrest of persons accused of crime committed outside of the city in which they hold office, and witness fees and mileage as provided by law for their appearance in any court of record. Any policeman violating any of the provisions of this section shall be guilty of a misdemeanor in office, and, upon conviction, shall be sentenced to pay a fine not exceeding fifty dollars, or undergo imprisonment not exceeding thirty days, or both, at the discretion of the court, to be followed by dismissal from office."

We have interpreted Section 2008 as prohibiting a third class city's payment of "fees" for appearances in criminal court. *City of York v. Reihart,* 475 Pa. 151, 379 A.2d 1328 (1977). *City of York* incorporated into Section 2008 a provision of the general municipal law, applicable through the Commonwealth, expressly proscribing "fees." See Act of August 19, 1953, P.L. 1100, § 1, 53 P.S. § 636 (1974) ("Under no circumstances shall . . . compensation [of all members of any police force employed by a municipality or a township] be determined by or include any fines, rebate of fines, or fees"). But neither 2008 nor the general municipal law prohibits hourly overtime pay as a form of compensation.

Section 2008 is markedly different from another provision of the general municipal law. Section 1 of the Act of July 14, 1897, P.L. 266, 53 P.S. § 633 (1974), provides:

> *"Policemen to be paid fixed salaries;*
> *not to accept any other fee; exceptions*
>
> From and after the passage of this act all municipalities or corporations, employing policemen within the commonwealth of Pennsylvania, shall pay to all such policemen a fixed or stipulated salary; and that hereafter it shall not be lawful for any such policeman to charge or accept any fee or other compensation, in addition to his salary, for any service rendered or performed by him of any kind or nature whatsoever pertaining to his office or duties as a policeman, except public rewards and the legal mileage allowed for traveling expenses."

The Legislature repealed this provision of the general municipal law insofar as it relates to third class cities. Third Class City Code, § 4701, 53 P.S. § 39701 (1957). The First Class Township Code, Act of June 24, 1931, § 1408, P.L. 1206, 53 P.S. § 56408 (as amended 1958), enacted the day after the Third Class City Code, underscores the intent of the Legislature to permit types of remuneration for third class city police officers not permitted police in other municipalities. Section 1408 of the First Class Township Code limits township policemen to "a fixed or stipulated salary." Compare e. g., The Borough Code, Act of February 1, 1966, P.L. (1965) 1656, § 1125, 53

and a half" rates and therefore the Board of Arbitration could lawfully award a "time and a half" rate of pay.

### III. "Overtime" For Hours Spent In Criminal Court

[4] Under the award, "[o]vertime for duty as a witness in a criminal court shall be paid for only as straight time and civil court time shall not constitute overtime." The Commonwealth Court concluded that Section 2004's daily and weekly limitation does not apply to overtime hours spent in criminal court occurring when Officer Friel is "off-duty." We agree with the City that Section 2004 applies whether Officer Friel is "off-duty" or not. The City does not deny Officer Friel compensation when he is a witness in criminal court during his regular duty hours.[11] His hours spent in criminal court, whether occurring while on or off duty, are a direct result of his law enforcement duties. Hourly compensation for either "on-duty" or "off-duty" hours spent in criminal court reflects the existence of precisely the same employment relationship between Officer Friel and the City of Chester. In these circumstances, it must be concluded that Section 2004 applies to Officer Friel's "off-duty" hours spent in criminal court. A holding to the contrary would circumvent the express limitation of Section 2004.

On the other hand, we find no statutory bar to overtime pay where hours spent in criminal court fall within the lawful limits of Section 2004 and the award's definition of overtime. It is true that *City of York v. Reihart*, 475 Pa. 151, 379 A.2d 1328 (1977), invalidated an ordinance providing third class city police officers $15 "for each day or portion thereof" spent in criminal court during "off-duty" hours. This Court concluded that the ordinance, enacted as a result

P.S. § 46125 (1966) ("[t]he borough police and special policemen appointed by the mayor shall receive such compensation as shall be fixed by the borough council"). The Borough Code also repeals the Act of 1897 insofar as it relates to boroughs. See The Borough Code, § 3501, 53 P.S. § 48501 (1966) ("[n]othing contained in this act shall be construed to revive any act or part of any act heretofore repealed"), and Act of May 14, 1915, P.L. 312, § 1 (repealing the Act of 1897 as applied to boroughs).

11. Brief For Appellees 19.

of an arbitration award under Act 111, provided police officers a "fee" proscribed by the general municipal law,[12] and Section 2008 of the Third Class City Code.[13] But no statute bars a third class city from compensating overtime.[14] Moreover, unlike the fee in *City of York*, the payments contemplated by the present arbitration award genuinely relate to "the number of hours or amount of time actually engaged in performing [the] function [of spending time in court]." Id., 475 Pa. at 160, 379 A.2d at 1332.

Further, the "danger to our concept of law enforcement," id., 475 Pa. at 162, 379 A.2d at 1333, present in the fee system proscribed in *City of York* simply does not exist here. In *City of York* we expressed concern that "payment for appearing as a witness might easily be transformed into a payment for each arrest the officer or a colleague makes to which he can be noted as a witness." On this record, however, there is no clear or predictable relationship between an arrest by an officer and the officer's potential entitlement to additional compensation as a court witness. Both Section 2004 of the Third Class City Code and the arbitration award place restrictions upon the number of hours of compensable overtime. Under the award, those hours spent in criminal court which may lawfully be compensated under Section 2004 and which fall within the award's definition of overtime are treated the same as time spent performing other duties. The award further contemplates only limited, hourly overtime, rather than a lump sum

12. Act of August 19, 1953, P.L. 1100, § 1, 53 P.S. § 636 (1974). The Act of August 19, 1953 contains an express prohibition against "fines, rebates of fines, or fees."

13. Section 2008 of the Third Class City Code is quoted supra at note 10. *City of York* read Section 2008 "as incorporating [the] exclusion [of the Act of August 19, 1953] as to any police persons' compensation established by ordinances of cities of the third class." *City of York v. Reihart*, 475 Pa. 151, 157, 379 A.2d 1328, 1331 (1977).

14. See statutes discussed supra at note 10. *City of York* expressly left open the question whether a third class city could provide overtime compensation for hours spent in criminal court. 475 Pa. at 160 n. 8, 379 A.2d at 1332 n. 8.

274

fee.  *City of York* is therefore in complete harmony with the result we reach today.

Order of the Commonwealth Court modified.  As modified, order affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.